UNITED STATES of America,
Plaintiff–Appellee,

v.

Derrick Vincent REDD, Defendant–
Appellant.

No. 97–5009.

United States Court of Appeals,
Fourth Circuit.

Argued Sept. 25, 1998.

Decided Dec. 7, 1998.

**ARGUED:** David Benjamin Smith, English & Smith, Alexandria, Virginia, for Appellant. Diana Ruth Rodeghiero, Office of the United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:** Helen F. Fahey, United States Attorney, Gary DiBianco, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.

Before NIEMEYER and WILLIAMS, Circuit Judges, and MAGILL, Senior Circuit Judge of the United States Court of Appeals for the Eighth Circuit, sitting by designation.

Affirmed by published opinion. Senior Judge MAGILL wrote the opinion, in which Judge NIEMEYER and Judge WILLIAMS joined.

## OPINION

MAGILL, Senior Circuit Judge:

Derrick Redd was charged on a seven count indictment of robbing three banks and attempting to rob a fourth. Redd pled guilty to two counts relating to one robbery, and a jury found Redd guilty of the remaining five counts. The indictment charged Redd with using a black revolver in the robberies; however, the eyewitness testimony at trial was that Redd's gun was a silver handgun. On appeal, Redd argues that: (1) the indictment was constructively amended at trial; and (2) the evidence was not sufficient to sustain his convictions. We affirm.

### I.

During November and December 1996, Redd committed a series of bank robberies in Virginia, two of which are the subject of appeal here. On November 8, 1996, Redd robbed the Hedges Run branch of the Virginia First Savings Bank in Woodbridge, Virginia (November 8 robbery). At trial, Charity Gentile, a bank teller, identified Redd as the robber and testified that he pointed a gun at her during the robbery. She described the weapon as "metal, looked like covered silver metal." J.A. at 53.

On December 10, 1996, Redd attempted to rob the Crestar Bank in Woodbridge, Virginia. Melissa Nash, a bank teller, testified at trial that she saw the butt of a black gun in Redd's pocket. Redd handed the teller a note, but then took the note back and left the bank without taking any money. On that same day, Redd successfully robbed the Noblewood Plaza branch of the First Virginia Bank in Woodbridge, Virginia.

Also on December 10, Redd again robbed the Hedges Run branch of the Virginia First Savings Bank in Woodbridge, Virginia (December 10 robbery). Patricia McCumber, a bank manager, testified at trial that Redd used a silver, medium-sized, semiautomatic handgun in the robbery.

The evidence at trial also showed that, at the time of the robberies, Redd was renting two rooms in a townhouse owned by James Paul. Paul owned a black .38 caliber revolver, which he kept in his bedroom. Paul testified at trial that he knew of no reason why Redd would know of the weapon's existence.

Redd was indicted on seven counts associated with the three robberies and the attempted robbery. Counts I and II involved the November 8 robbery: Count I charged a violation of 18 U.S.C.§ 2113(a) & (d) (bank robbery), and Count II charged a violation of 18 U.S.C. § 924(c) (use of a firearm during a crime of violence). Count I alleged that Redd used "a dangerous weapon, namely, a black revolver," and Count II incorporated that description.

Counts III and IV related to the Noblewood Plaza branch robbery on December 10, and also charged Redd with bank robbery and use of a firearm during a crime of vio-

lence involving a black revolver. Redd pled guilty to these counts before trial.

Count V charged Redd with the attempted robbery of the Crestar bank, in violation of 18 U.S.C. § 2113(a). Counts VI and VII charged Redd with bank robbery and use of a firearm during a crime of violence involving a black revolver in the December 10 robbery of the Hedges Run branch.

Redd went to trial on counts I, II, V, VI, and VII. In addition to eyewitness testimony that Redd was the man who robbed each bank, surveillance photos showed Redd at both December 10 robbery sites. Redd admitted to the December 10 robbery at the Hedges Run branch, but denied that he used a gun. There were no usable photos from the November 8 robbery, and Redd argued that it was Paul, not Redd, who committed that robbery. Redd also argued that there was no evidence of a firearm for this robbery.

Redd was found guilty on all charges. The district court sentenced Redd to a total of 603 months imprisonment. Redd appeals his convictions for the November 8 and December 10 robberies. Redd argues that because the government specifically indicted him for using a black revolver, but at best proved that he used a silver colored handgun, the indictment was constructively amended at trial. Redd also argues that there was insufficient evidence that he used a firearm during the robberies, or that the firearm was a black revolver. We address each of these arguments in turn.

## II.

### A.

■ In each count of the indictment, the government either alleged, or incorporated by reference an allegation, that Redd used a black revolver. Redd contends that the government, at best, proved he used a silver colored handgun. Thus, he argues, the indictment was constructively amended at trial. We disagree.[1]

■ The Fifth Amendment to the United States Constitution provides for a right to indictment by grand jury. U.S. Const. amend. V; *United States v. Floresca*, 38 F.3d 706, 709 (4th Cir.1994) (en banc). This right is violated when the proof offered at trial permits a jury to convict a defendant for a different offense than that for which he was indicted. *See United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir.1996)("When a defendant is convicted of charges not included in the indictment, an amendment has occurred which is *per se* reversible error."); *United States v. Hamilton*, 992 F.2d 1126, 1130 n. 5 (10th Cir.1993).

■ Not all variances between an indictment and the proof offered at trial, however, constitute a constructive amendment of an indictment. A variance in the indictment violates a defendant's rights only if it prejudices him. *Fletcher*, 74 F.3d at 53. As this Court has stated, this occurs only when the variance either "surpris[es the defendant] at trial and hinder[s] the preparation of his defense, or ... expos[es] him to the danger of a second prosecution for the same offense." *Id.* (citations omitted). However, "[a]s long as the proof at trial does not add anything new or constitute a broadening of the charges, then minor discrepancies between the Government's charges and the facts proved at trial generally are permissible." *Id.; see also Floresca*, 38 F.3d at 709–10 ("Once a reviewing court determines that the facts incorrectly noted in the indictment do not concern an issue that is essential or material to a finding of guilt, the focus is properly upon whether the indictment provided the defendant with adequate notice to defend the charges against him.") (footnote omitted). Thus, as long as the indictment provides the defendant with adequate notice of the charges against him and is sufficient to

---

1. Because Redd did not move to dismiss the indictment at the time the evidence was presented at trial, he failed to preserve this claim for appellate review. Cf. *United States v. Morrow*, 925 F.2d 779, 780 (4th Cir.1991) (properly preserving similar claim for appellate review by moving to dismiss indictment at the close of evidence). Nevertheless, under Rule 52(b) of the Federal Rules of Criminal Procedure, this Court may notice, in its discretion, "[p]lain errors or defects affecting substantial rights," even though no objection was made. *See, e.g., Johnson v. United States*, 520 U.S. 461, 117 S.Ct. 1544, 1548, 137 L.Ed.2d 718 (1997); *United States v. Olano*, 507 U.S. 725, 731–32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

allow the defendant to plead it as a bar to subsequent prosecutions,[2] a variance in proof at trial will not prejudice the defendant. *See United States v. Miller*, 471 U.S. 130, 134–35, 105 S.Ct. 1811, 85 L.Ed.2d 99 (1985); *Fletcher*, 74 F.3d at 53.

■ These notice-related concerns are not implicated when the alleged variance does not affect an essential element of the offense. *See Floresca*, 38 F.3d at 709–10. Several courts, including this Court, have held that the inclusion of a description of a weapon in an indictment does not render that description an essential element of the offense. For example, in *United States v. Morrow*, 925 F.2d 779 (4th Cir.1991), the government had described a weapon in an indictment using the wrong serial number. This Court held that this variance was harmless, and explained:

> The omission of the first digit in a seven digit serial number of a firearm set forth in an indictment does not result in a substantial amendment to the indictment or a prejudicial variance in proof when corrected at trial. Such a variance goes to form and not to substance, and the difference did not reduce the government's burden of proof at trial.

*Id.* at 781. *See also United States v. Ford*, 986 F.2d 57, 59 (4th Cir.1993) (finding no impermissible variance where length of sawed-off shotgun introduced at trial differed from that given in indictment).

■ Similarly, the Eighth Circuit held that an indictment was not constructively amended where the indictment alleged the use of one brand of firearm while the evidence at trial showed it was a different brand. *See United States v. McIntosh*, 23 F.3d 1454, 1457–58 (8th Cir.1994). That court held that "the brand of the firearm is not an essential element of the offense." *Id.* at 1457. Because the brand was not an essential element, the indictment "fully and fairly" apprised the defendant of the charges against him, and thus the defendant was not prejudiced. *Id.* at 1458.[3] Therefore, because descriptions of firearms relate to "form and not to substance," *Morrow*, 925 F.2d at 781, variances related to those descriptions do not prejudice a defendant.

Here, as in *McIntosh*, the description of a "black revolver" was not an essential element of the crime charged. Because the type of firearm is not an essential element of the crime charged, "the government merely had to produce evidence at trial from which the jury could find beyond a reasonable doubt that Defendant had used a *firearm* during the robbery and was not required to prove that the firearm was a [black] revolver." *Hamilton*, 992 F.2d at 1130.

Redd argues, unsuccessfully, that he was impaired in presenting his defense because the indictment alleged a black revolver. Redd had full notice that he was being prosecuted for a firearms offense. *See McIntosh*, 23 F.3d at 1458. He was thus able to argue, as he did at trial, that there were no guns involved in the robberies. *See* J.A. at 182–83. Whether the gun was black or silver is irrelevant to the question of whether one was used during the robbery. Moreover, Redd was informed prior to trial that the witnesses would testify that the gun was silver. This Court has previously noted that where the defendant is on notice of a variance prior to trial, substantial rights are simply not affected. *See Ford*, 986 F.2d at 59.

2. As Redd's counsel recognized at oral argument, if we accept his argument that use of a black revolver is a different offense than use of a silver handgun, Redd could be indicted again for the same charges using a silver handgun. However, because we hold that the type of gun is not an essential element of the offense with which Redd was charged, the indictment is sufficient to bar a subsequent prosecution for the firearms offenses in the instant case.

3. We do not agree with Redd that the Seventh Circuit's decision in *United States v. Leichtnam*, 948 F.2d 370 (7th Cir.1991), requires a finding that his indictment was constructively amended. In *Leichtnam*, the prosecutor introduced three guns at trial, while the indictment specified one Mossberg rifle. The trial court instructed the jury that it could convict if it found that any of the three weapons was used in connection with a drug trafficking offense. *See id.* at 374–75. The Seventh Circuit reversed the conviction, finding that the indictment had been constructively amended by broadening the possible bases for conviction. *See id.* at 379–81. By contrast, the government here proffered only one gun to substantiate the charge; the variance merely related to the type of gun. *See United States v. Munoz*, 150 F.3d 401, 417 & n. 14 (5th Cir.1998)(no variance where indictment identified weapon as 12 gauge shotgun and evidence at trial showed weapon to be 20 gauge; distinguishing *Leichtnam* because, unlike *Leichtnam*, prosecutor proffered only one gun to substantiate charge).

Because the type of firearm is not an essential element of the crime charged, Redd had sufficient notice of the charges against him. Thus, Redd's Fifth Amendment rights were not violated.

### B.

Redd next argues that there was insufficient evidence that he used a firearm in both robberies or that the firearm was a black revolver. Both arguments are meritless.

■ When assessing the sufficiency of the evidence of a criminal conviction on direct review, "[t]he verdict of [the] jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." *See Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

Our holding that the type of firearm used is not an essential element of the offense precludes Redd's sufficiency argument on this point. *See Hamilton*, 992 F.2d at 1129–30 (rejecting defendant's sufficiency argument where type of firearm specified in indictment differed from evidence at trial; government needed to prove beyond a reasonable doubt only that defendant used a firearm). Thus, Redd's only argument is that there was insufficient evidence to prove he used a firearm in the robberies.

■ There was sufficient evidence in this case for a rational jury to convict Redd of using a firearm in both robberies. Eyewitness testimony is sufficient to prove that a person used a firearm. *See United States v. Jones*, 907 F.2d 456, 460 (4th Cir.1990) (eyewitness testimony that gun used in robbery sufficient to find guilt beyond a reasonable doubt on firearms charge); *see also United States v. Jones*, 16 F.3d 487, 490 (2d Cir. 1994) (eyewitness testimony sufficient for government to meet burden of proof on firearms charge even though gun not recovered "so long as it provides a rational basis for the jury to find that the object observed by eyewitnesses was, in fact, a firearm.") (quotations omitted), *cert. denied*, —— U.S. ——, 118 S.Ct. 432, 139 L.Ed.2d 332 (1997).

Here, two eyewitnesses offered testimony that Redd used a gun. Gentile testified that Redd used a gun during the November 8 robbery. *See* J.A. at 53. Although Redd argues Gentile later qualified her statement by saying she was not sure that what she saw was a gun, *id.* at 61, Gentile also testified that she saw the barrel of the gun, that it was resting on the counter pointed at her, that it looked like "covered silver metal," and that it "looked like a gun." *Id.* at 53, 61. As to the December 10 robbery, McCumber testified with even more specificity that Redd used a handgun. *See id.* at 94–95. This eyewitness testimony was sufficient for a rational jury to conclude that Redd used a firearm during the commission of these robberies.

### III.

For the foregoing reasons, we affirm.

*AFFIRMED.*